**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-62393-CIV-DAMIAN**

**MANUEL EDUARDO MONRROY FIGUEROA,**

Petitioner,

v.

**OFFICER IN CHARGE, MIRAMAR ICE FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**, *et al.*,

Respondents.
______________________________________/

**ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS***

**THIS CAUSE** is before the Court on Petitioner, Manuel Eduardo Monrroy Figueroa's ("Petitioner"), Verified Petition For Writ of *Habeas Corpus*, filed on August 29, 2026. [ECF No. 1 (the "Petition")]. Respondent[1] filed a Response to this Court's Order to Show Cause [ECF No. 6] on September 9, 2026 [ECF No. 9 ("Response")], and Petitioner filed a Reply on September 16, 2026 [ECF No. 10].

THE COURT has reviewed the Petition, the Response and Reply thereto, the relevant legal authorities, and the pertinent portions of the record and is otherwise fully advised. For the reasons set forth below, the Petition is due to be granted in part.

[1] As noted in the Response, a writ of *habeas corpus* must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243. In cases involving present physical confinement, the Supreme Court reaffirmed in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." Petitioner is currently detained at Krome North Service Processing Center ("Krome") in Miami, Florida. Therefore, the Warden or the assistant field office director of Krome is the proper Respondent in this case, and this Court will refer to him or her as the sole Respondent.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at Krome North Service Processing Center in Miami, Florida. *See* ECF No. 9-5. On March 14, 2024, Petitioner entered the United States at Miami International Airport, as a Venezuelan Humanitarian Parolee, and was paroled until June 12, 2025. *See* Pet. ¶ 2; Resp. at 1; ECF No. 9-2. Petitioner was not served a Notice to Appear ("NTA") nor were any immigration proceedings commenced against Petitioner at that time. While on parole, Petitioner filed an asylum application with U.S. Citizenship and Immigration Services, which remains pending. *See* Pet. ¶ 3. Petitioner also obtained employment authorization through 2030, as well as a Florida driver's license. *Id.* ¶ 4.

On August 28, 2026, while driving to work, Petitioner was detained after a traffic stop and taken into ICE custody. *See* Pet. ¶¶ 5–6; ECF No. 9-5. On September 5, 2026, the Department of Homeland Security ("DHS") served Petitioner with an NTA in which it checked the box: "You are an arriving alien." [ECF No. 9-6].

On August 29, 2026, Petitioner filed the Petition now before this Court in which he challenges his continued detention under 8 U.S.C. § 1225(b). Petitioner argues, generally, that he is entitled to a bond determination hearing and that pursuant to *Hernandez Alvarez v. Warden, Miami Federal Detention Center*, 175 F.4th 1258 (11th Cir. 2026), the provisions of 8 U.S.C. § 1226(a) applies to individuals in his circumstances, that is, aliens in the United States who were detained within the interior of the country, rather than § 1225, which applies to aliens actively seeking admission to the United States. *See generally* Pet.

Respondents, on the other hand, argue that Petitioner is an alien seeking admission whose circumstances are governed by the provisions of § 1225(b)(2) such that he is subject to

mandatory detention based on the plain language of the statute. *See generally* Resp. Respondents contend that what sets this case apart from *Hernandez Alvarez* is that here, Petitioner presented himself at the border and availed himself of United States immigration law to get parole while the petitioners in *Hernandez Alvarez* entered surreptitiously and never applied for any benefits at the border. *Id.* Respondents further argue that after Petitioner's parole expired, he returned to the status of an applicant for admission seeking admission into the United States as he was when he initially presented himself at the port of entry. The Petition is ripe for adjudication.

## II. LEGAL STANDARD

District courts have the authority to grant writs of *habeas corpus*. *See* 28 U.S.C. § 2241(a). *Habeas corpus* is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

At the outset, this Court is mindful that *Hernandez Alvarez* is not on all fours because, as Respondents point out, those petitioners were differently situated. The Eleventh Circuit's analysis in that case is, nevertheless, binding on this Court. That is, the question before the Eleventh Circuit in *Hernandez Alvarez*, whether the government was improperly misclassifying aliens as subject to section 1225(b)(2)'s mandatory detention provision when they were actually subject to section 1226(a)'s discretionary detention provisions, was the same as the issue now before this Court.

8 U.S.C. § 1225(b)(2)(A) provides: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." Following the statute's plain text, in order for this statute to apply, the alien must be *both* an "applicant for admission" and "seeking admission" at the time of his or her detention.

In *Hernandez Alvarez*, the Eleventh Circuit interpreted the terms "applicant for admission" and "seeking admission." 175 F.4th at 1267. As the court explained, "[T]he [INA] defines 'applicant for admission' to be a passive condition, and 'deems' an alien to be an applicant merely by arriving or being present in the United States without having been admitted." *Id.* (citing § 1225(a)). However, the Eleventh Circuit reasoned that "the act of seeking admission constitutes the pursuit of 'lawful entry . . . after inspection and authorization by an immigration officer[.]'" *Id.* at 1269 (quoting § 1101(a)(13)(A)).

Thus, the Eleventh Circuit concluded:

> Putting the pieces together, the plain text of § 1225(b)(2)(A), as supplemented by the definitions chosen by Congress in the INA, yields this command: an alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer. [. . .]
>
> Applying this construction, it seems to us that Petitioners do not fall within the scope of § 1225(b)(2)(A). All agree that Petitioners satisfy the first condition of being "present in the United States without having been admitted," because they were discovered in the interior but were never granted lawful entry. However, on this record, we cannot also say that they were "seeking lawful entry after inspection and authorization by an immigration officer" when they were detained. Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry. They were only present

> in the country. They were not seeking or pursuing any object, let alone "lawful entry."

*Id.* Respondents are correct that Petitioner's circumstances are not entirely the same as the petitioners in *Hernandez Alvarez* because here, Petitioner had originally presented himself to immigration officials and did not surreptitiously cross the border. Nevertheless, the Eleventh Circuit's opinion in *Hernandez Alvarez* is still binding because the court's opinion addresses when an alien can be held in mandatory detention under section 1225(b)(2).

Here, as in *Hernandez Alvarez*, Respondents' mandatory detention analysis fails on the second prong. There is no dispute that Petitioner is an "applicant for admission" because he is "present in the United States [and] has not been admitted[.]" *See* § 1225(a)(1). But there is no cogent argument that Petitioner was "seeking lawful entry" when he was detained following the traffic stop, so Petitioner cannot be said to have been "seeking admission" when detained.[2]

The undersigned notes that this Court, like the majority of courts in this Circuit that have addressed this issue post-*Hernandez Alvarez,* has previously concluded that post-parole

[2] This Court is also not persuaded that Petitioner is still seeking admission based on a parole application he filed years ago for a program that, for all intents and purposes, no longer exists. Respondents' position is not in accord with the Eleventh Circuit, which stresses that the "seeking admission" inquiry is directed at the facts as they exist when an alien is detained. *See Hernandez Alvarez*, 175 F.4th at 1269 ("[W]e cannot also say that they were 'seeking lawful entry after inspection and authorization by an immigration officer' when they were detained. Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."). Nor can it be said that Petitioner's pending asylum application constitutes an act of "seeking admission." *Hernandez Alvarez* expressly distinguishes the act of "seeking admission" from seeking some other type of lawful status when present in the United States. 175 F.4th at 1269 ("[T]he act of seeking admission constitutes the pursuit of 'lawful entry . . . after inspection and authorization by an immigration officer,' and all the rights and privileges that follow from lawful entry, which is quite distinct from seeking another lawful status.").

detainees fall under Section 1226(a), not Section 1225(b)(2). *See Del Valle Vargas v. Warden, Broward Trans. Ctr., et al*, No. 26-62031-CIV (S.D. Fla. Oct. 19, 2026) (Damian, J.); *Pierre v. Miami ICE Field Off. Dir.*, No. 26-14327-CIV, 2026 WL 2725816 (S.D. Fla. Sept. 16, 2026) (Martinez, J.) (treating parolee who was arrested following a traffic stop the same as petitioners in *Hernandez Alvarez* and rejecting respondent's argument that petitioner is subject to mandatory detention as an arriving alien after parole expired); *Khodzhiev v. Warden, Broward Transitional Ctr.*, No. 26-CV-62377, 2026 WL 2640603 (S.D. Fla. Sept. 8, 2026) (Dimitrouleas, J.) (finding that § 1226(a) rather than § 1225(b)(2)(A) governs petitioner's detention when petitioner was initially placed into expedited removal proceedings and subsequently granted parole); *Naumkin v. Warden, Krome North Serv. Processing Ctr.*, 836 F. Supp. 3d 1202, 1210–11 (S.D. Fla. 2026) (Moore, J.) (rejecting respondents' argument that "applicant for admission" and "seeking admission" are synonymous as applied to a former parolee who was detained); *Allende-Uton v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-CV-21532, 2026 WL 2254409 (S.D. Fla. June 18, 2026) (Bloom, J.) (finding "no material distinction" between petitioner, who entered the United States as a parolee and was later arrested by immigration authorities in his driveway, and the petitioners in *Hernandez Alvarez*, and noting "[b]y the Eleventh Circuit's binding reasoning, Petitioner was not seeking admission"); *Sekunov v. Warden*, No. 26-cv-60925, 2026 WL 2198856 (S.D. Fla. June 2, 2026) (Bloom, J.) (same); *Sylvaince v. Warden, Miami Fed. Det. Ctr.*, No. 26-cv-23991, 2026 WL 2568522 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (ordering bond hearing for Haitian former parolee and concluding that mandatory detention under § 1225(b)(2) was improper); *Hyacinthe v. Warden, N. Fla. Det. Facility*, No. 26-cv-1717-JEP-MCR, 2026 WL 2184969 (M.D. Fla. July 29, 2026)

(same); *Eugene v. Warden, Baker Cnty. Corr. Inst.*, No. 26-cv-889-JEP-SJH, 2026 WL 2069935 (M.D. Fla. July 17, 2026) (same).

Respondents argue that upon the expiration of his parole, Petitioner became subject to mandatory detention pursuant to § 1225(b)(2). Resp. at 5–7. Respondents cite 8 U.S.C. § 1182(d)(5)(A), which authorizes the DHS Secretary to grant a discretionary and temporary "parole into the United States" to any "alien applying for admission to the United States" on "a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). And "when the purposes of such parole . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Respondents then point to a DHS regulation which provides that upon expiration of parole under 8 U.S.C. § 1182(d)(5)(A), a noncitizen "shall be restored to the status that he or she had at the time of parole." Resp. at 5 (citing 8 C.F.R. § 212.5(e)(2)(i)).

While Respondents are correct that the expiration of § 1182(d)(5)(A) parole returns the parolee "to the custody from which he was paroled," courts in this Circuit have consistently held that the expiration of a § 1182 parole does not require treating the alien as if he had never been paroled in the first place. *Zaga Tawil v. Cardinal*, No. 26-22521, 2026 WL 2198539, at *5 n.2 (S.D. Fla. July 30, 2026) (Bloom, J.) (collecting cases); *Rodriguez Valencia v. Noem*, No. 3:26-CV-297-MMH-PDB, 2026 WL 730318, at *6 (M.D. Fla. Mar. 16, 2026) (finding that it would be "absurd" to classify an alien initially detained and paroled under § 1225(b)(2) as "arriving" years after her parole and finding her detained under § 1226). Instead, these courts reason that "[s]ection 1182(d)(5)(A) suggests that rather than reverting to any

prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez Valencia v. Noem*, No. 26-cv-00297, 2026 WL 730318, at *5 (M.D. Fla. Mar. 16, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025)). Accordingly, "based on the border-interior distinction instantiated in § 1225 and § 1226, an alien like Petitioner—who is re-detained in the interior after living in the United States for years—is properly re-detained only under § 1226(a)." *Zaga Tawil*, 2026 WL 2198539, at *5 n.2. This approach is consistent with the Eleventh Circuit's binding decision in *Hernandez Alvarez*. Thus, this Court finds that 8 U.S.C. § 1226(a) and its implementing regulations govern Petitioner's detention. Therefore, Petitioner is entitled to an individualized bond hearing.

Because this Court will grant in part the relief Petitioner seeks based on the alleged INA violation, this Court declines to analyze the other bases for relief asserted in the Petition.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Petition [**ECF No. 1**] is **GRANTED IN PART** to the extent that Petitioner requests this Court to direct the Immigration Court to give him a bond hearing. It is further

**ORDERED** that Respondents shall **FORTHWITH** afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner. The bond hearing must take place no later than **October 29, 2026**. It is further

**ORDERED** that on or before **November 5, 2026**, Petitioner shall file a Joint Status Report informing this Court of whether Petitioner was given a bond hearing, and if so, the

outcome of Petitioner's bond hearing and the status of matters relevant to the Petition. Counsel for the Petitioner shall confer with counsel for the Respondents prior to filing the Status Report and must include a certification therein that the Respondents do not object to the representations made regarding the status of this case. It is further

**ORDERED** that the Clerk of Court is **DIRECTED** to **CLOSE** this case for *administrative and statistical purposes only* pending compliance with the instant Order and until further Order of this Court. All pending motions are **DENIED AS MOOT**.

This Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should additional relief be sought relating to the Petition or this Order.

**DONE AND ORDERED** in the Southern District of Florida, this 19th day of October, 2026.



**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record